IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| ARSEN KULUMBEKOV,<br><br>    Petitioner,<br>v.<br><br>CORY WILLIAMS, in his official capacity as Chief Jail Administrator of Polk County Jail; KEVIN SCHNEIDER, in his official capacity as Polk County Sheriff; SAMUEL OLSON, in his official capacity as St. Paul Field Office Director; TODD LYONS, in his official capacity as Acting Director of United States Immigration and Customs Enforcement; SIRCE OWEN, in her official capacity as Acting Director of the Executive Office for Immigration Review; and KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security,<br><br>    Respondents. | No. 4:25-cv-00506-RGE-HCA<br><br>ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS |

## I.    INTRODUCTION

Petitioner Arsen Kulumbekov brings a petition for a writ of habeas corpus against Respondents Cory Williams, in his official capacity as Chief Jail Administrator of Polk County Jail; Kevin Schneider, in his official capacity as Polk County Sheriff; Samuel Olson, in his official capacity as St. Paul Field Office Director; Todd Lyons, in his official capacity as Acting Director of United States Immigration and Customs Enforcement; Sirce Owen, in her official capacity as Acting Director of the Executive Office for Immigration Review; and Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security.[1] Kulumbekov, who was previously

---

[1] The Court refers to Respondents Cory Williams and Kevin Schneider as "State Respondents." The Court refers to Respondents Samuel Olson, Todd Lyons, Sirce Owen, and Krisi Noem as "Federal Respondents."

paroled into the United States and permitted to apply for asylum, is currently in federal custody pursuant to immigration proceedings. In this habeas corpus petition, Kulumbekov challenges his mandatory detention and requests immediate release or a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days.

The Court concludes Kulumbekov is being detained unlawfully and grants his petition for a writ of habeas corpus.

## II. BACKGROUND

The petition alleges Kulumbekov is a twenty-six-year-old Russian native and citizen. Pet. Writ Habeas Corpus ¶ 19, ECF No. 1. Kulumbekov submitted a request to arrive in the United States on February 23, 2023, using the CBP One process. *Id.* ¶ 45; Pet'r's Ex. 2 Supp. Pet. Writ Habeas Corpus, ECF No. 1-3. Upon entering the United States on approximately March 8, 2023, Kulumbekov was paroled pursuant to 8 U.S.C. § 1182(d)(5) for one year to allow him to apply for asylum. ECF No. 1 ¶ 46; Fed. Resp'ts' Resp. Pet. Writ Habeas Corpus 1–2, ECF No. 8; Fed. Resp'ts' Ex. 2 Supp. Resp. Pet. Writ Habeas Corpus, Erdman Decl. ¶ 15, ECF No. 8-1. Kulumbekov and Federal Respondents agree Kulumbekov's parole was to expire on March 6, 2024. ECF No. 8 at 2; Pet'r's Reply Pet. Writ Habeas Corpus ¶ 4, ECF No. 12; *see* Pet'r's Ex. 8 Supp. Reply Pet. Writ Habeas Corpus, ECF No. 12-1.

Kulumbekov filed an Application for Asylum and for Withholding of Removal in March 2024, which was received by the government. ECF No. 1 ¶ 47; Pet'r's Ex. 3 Supp. Pet. Writ Habeas Corpus, ECF No. 1-4. After filing for asylum, Kulumbekov filed an application for and was granted employment authorization. ECF No. 1 ¶ 48; Pet'r's Ex. 4 Supp. Pet. Writ Habeas Corpus, ECF No. 1-5. Kulumbekov complied with Department of Homeland Security (DHS) requirements during this period, including by appearing for biometrics processing. ECF No. 1 ¶ 49, Pet'r's Ex. 5 Supp. Pet. Writ Habeas Corpus, ECF No. 1-6.

United States Customs and Immigrations Services then, with an undated notice, cancelled Kulumbekov's asylum application and forwarded his Application for Asylum and for Withholding of Removal to immigration court. ECF No. 1 ¶ 50; Pet'r's Ex. 6 Supp. Pet. Writ Habeas Corpus, ECF No. 1-7. Kulumbekov received a Notice to Appear from DHS on October 17, 2025, which charged him with being an "arriving alien" and informed him he was subject to removal pursuant to § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act, codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I). ECF No. 1 ¶ 51; Pet'r's Ex. 7 Supp. Pet. Writ Habeas Corpus, ECF No. 1-8.

On November 19, 2025, Kulumbekov was taken into custody by Immigration and Customs Enforcement and is currently detained in the Polk County Jail in Polk County, Iowa. ECF No. 1 ¶ 52. His initial hearing took place in Texas, because DHS believed he was being held in Polk County, Texas. ECF No. 12 ¶ 5; Pet'r's Ex. 9 Supp. Reply Pet. Writ Habeas Corpus, ECF No. 12-2. Venue was then changed to the Omaha, Nebraska Immigration Court. ECF No. 12 ¶ 5; Pet'r's Ex. 10 Supp. Reply Pet. Writ Habeas Corpus, ECF No. 12-3. There is confusion as to whether Kulumbekov's next hearing date is January 22, 2026, or January 29, 2026. *See* Pet'r's Ex. 11 Supp. Reply Pet. Writ Habeas Corpus, ECF No. 12-4 (listing his next hearing date as January 22, 2026); Pet'r's Ex. 13 Supp. Reply Pet. Writ Habeas Corpus at 2, ECF No. 12-6 (listing his next hearing date as January 29, 2026).

Kulumbekov filed a petition for a writ of habeas corpus and complaint, asserting he is being detained in violation of 8 U.S.C. § 1226(a) (Count I) and 8 C.F.R. §§ 236.1, 1236.1, and 1003.19 (Count II). ECF No. 1 ¶¶ 54–62. Kulumbekov requested the Court issue a show cause order to require Respondents to show why Kulumbekov is not being unlawfully detained and issue an order prohibiting Respondents from moving him outside of the Southern District of Iowa. *Id.* at 16. The Court issued a show cause order requiring Respondents to show cause why Kulumbekov is not

being unlawfully detained and continued the Court's order prohibiting Respondents from removing Kulumbekov outside of the Southern District of Iowa without notice and an opportunity to be heard. Order Show Cause, ECF No. 4; *see* Text Order, ECF No. 2. Federal Respondents filed a response in accordance with the Court's show cause order. ECF No. 8. State Respondents did not file a response. Kulumbekov replied. ECF No. 12.[2]

Kulumbekov requests the Court issue a writ of habeas corpus ordering Respondents to release him from custody or provide him with a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days. ECF No. 1 at 16.

The Court sets out additional facts as necessary below.

### III.   LEGAL STANDARD

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. §§ 2241(a), (c)(3)). "[T]he writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). The district court's habeas jurisdiction includes challenges to immigration-related detention. *See Zadvydas v. Davis,* 533 U.S. 678, 687–88 (2001). The district court's habeas jurisdiction also includes challenges to detention by noncitizens. *See id.*; *Jennings v. Rodriguez,* 583 U.S. 281, 292–96 (2018).

---

[2] Kulumbekov included argument related to violations of the Due Process Clause in his Reply. *See* ECF No. 12 ¶¶ 18–29. Because Kulumbekov did not allege violations of his due process rights in his complaint and petition for a writ of habeas corpus, the Court does not consider Kulumbekov's due process arguments in its analysis. *See* ECF No. 1; LR 7(g).

## IV. DISCUSSION

Kulumbekov challenges his continued detention as a violation of 8 U.S.C. § 1226(a) and various bond regulations. *See* ECF No. 1 ¶¶ 54–62. Kulumbekov asserts he is being detained pursuant to the mandatory detention framework of 8 U.S.C. § 1225(b), which requires detention for certain individuals in expedited removal proceedings. *Id.* ¶¶ 1, 26–44. Kulumbekov argues he is not subject to mandatory detention under the § 1225(b) framework because he was granted parole upon entering the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) and is no longer an "arriving" noncitizen. *Id.* ¶¶ 7, 37–38; *see* ECF No. 12 ¶¶ 6–17.

Federal Respondents cite to § 1182(d)(5)(A) to argue Kulumbekov is subject to mandatory detention. ECF No. 8 at 4–5. Section 1182(d)(5)(A) reads, in relevant part,

> The Secretary of Homeland Security may. . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A). Federal Respondents argue, because Kulumbekov was an arriving alien when he first entered the United States and his parole was granted for only a limited time, the language of § 1182(d)(5)(A) reverts Kulumbekov to "arriving" status when his parole expired and permits his mandatory detention. ECF No. 8 at 4–5.

Immigration parole under § 1182(d)(5)(A) is an exception to the mandatory detention framework of § 1225(b)(1). *Jennings,* 583 U.S. at 288 ("applicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit'" (quoting 8 U.S.C. § 1182(d)(5)(A))). Kulumbekov's immigration parole under § 1182(d)(5)(A) expired on March 6, 2024, approximately one year after he entered the United States. ECF No. 8

5

at 2; ECF No. 12 ¶ 4; *see* Pet'r's Ex. 8, ECF No. 12-1. "[N]othing in th[e] text [of § 1182(d)(5)(A)] affirmatively authorizes detention" after parole expires. *Clark v. Martinez*, 543 U.S. 371, 385 (2005); *see Rodriguez-Acurio v. Almodovar,* No. 2:25-CV-6065, 2025 WL 3314420, at *18 (E.D.N.Y. Nov. 28, 2025) (citing *Clark* for the proposition § 1182(d)(5)(A) "is not an independent authority to detain parolees following the expiration of parole"). Because immigration parole is an exception to the detention framework of §1225(b)(1), the Court analyzes whether the expiration of Kulumbekov's immigration parole under § 1182(d)(5)(A) authorizes mandatory detention under § 1225(b)(1). *See* 8 U.S.C. § 1225(b).

Section 1225(b) authorizes mandatory detention for certain "applicants for admission" to the United States. 8 U.S.C. § 1225(a)(1). Those subject to expedited removal are subject to mandatory detention under § 1225(b)(1). *See* 8 U.S.C. § 1225(b)(1). Those subject to expedited removal under § 1225(b)(1), and therefore subject to mandatory detention, must be "arriving in the United States," 8 U.S.C. § 1225(b)(1)(A)(i) or must "not [have] been admitted or paroled into the United States," 8 U.S.C. § 1225(b)(1)(A)(iii)(II). *See Rodriguez-Acurio,* WL 3314420, at *9–10; *Coal. for Humane Immigrant Rts. v. Noem*, No. 25-CV-872, 2025 WL 2192986, at *3–6 (D.D.C. Aug. 1, 2025). Kulumbekov is not "arriving" in the United and *has* been affirmatively paroled into the United States. Therefore, Kulumbekov is not subject to the mandatory detention framework of § 1225(b)(1).

### A. Arriving in the United States

Kulumbekov is not a noncitizen "arriving in the United States" under the plain language of § 1225(b)(1)(A)(i). Section 1225(b) does not define "arriving," nor does the Immigration and Nationality Act as a whole. The Court, therefore, relies on the plain meaning of "arriving" to interpret § 1225(b). *See Barnhart v. Sigmon Coal Co.,* 534 U.S. 438 at 461–62 (2002) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it

says."). Recent district court orders have addressed the plain meaning of "arriving" and read "arriving" in § 1225(b)(1)(a)(i) to mean noncitizens arriving at the border of the United States. *See, e.g., Qasemi v. Francis*, No. 25-CV-10029, 2025 WL 3654098, at *6 (S.D.N.Y. Dec. 17, 2025) ("The provisions applying to 'arriving aliens' thus logically apply just to those noncitizens upon their presentation at the border of the United States."); *Rodriguez-Acurio v. Almodovar*, 2025 WL 3314420, at *20 ("[A]n 'arriving alien' is one who is in the process of reaching the United States."); *Coal. for Humane Immigrant Rts.*, 2025 WL 2192986, at *28 ("Read according to its plain meaning, a noncitizen 'arriving' in the United States would be one who is in the process of reaching his or her destination (the United States) and making an appearance here."). Federal Respondents do not provide argument or authority to persuade the Court to diverge from the plain meaning of "arriving" as read by other district courts and used in § 1225(b)(1)(a)(i). Thus, the Court reads § 1225(b)(1)(A)(i)'s noncitizen "arriving in the United States" language to apply to a person arriving at the border to the United States. Kulumbekov has been in the United States since 2023 and is not "arriving." ECF No. 8 at 1; ECF No. 12 ¶ 4.

Federal Respondents argue "Petitioner unquestionably was an arriving alien when he initially entered the United States," and, "once [his] parole expired, Petitioner reverted to the same status he had upon arriving at the United States's border"—presumably, the "status" of an "arriving" noncitizen. ECF No. 8 at 4. Federal Respondents cite to the statutory language of § 1182(d)(5)(A), but do not explain how the language of § 1182(d)(5)(A) requires Kulumbekov's status to revert to that of an arriving noncitizen after the expiration of his parole. Section 1182(d)(5)(A) "does *not* state that a noncitizen is returned to the 'status' they held upon their parole, that they revert to status as an 'arriving alien,' or that they must be detained." *Qasemi*, 2025 WL 3654098, at *10 (emphasis in original) (holding § 1182(d)(5)(A) "does not require the Court to pretend that [noncitizen petitioner] was never paroled and permitted to live freely in this

country. A noncitizen is not reverted by operation of law to status as an arriving alien"). Further, while Kulumbekov may have been subject to the "legal fiction," ECF No. 8 at 2, that he remained an arriving noncitizen at the border throughout the duration of his parole, "the 'entry fiction' ends once a person has been living in the country after parole expires." *Cabrera Martinez v. Marich*, No. 25-CV-1110-LJV, 2025 WL 3771228, at *6–13 (W.D.N.Y. Dec. 31, 2025).

Because Kulumbekov is not arriving to the United States, he is not subject to mandatory detention under § 1225(b)(1)(A)(i).

### B.  Paroled into the United States

Kulumbekov does not fall into the second category of noncitizens subject to mandatory detention as one "who has not been admitted or paroled into the United States." 8 U.S.C. § 1225(b)(1)(A)(iii)(II). Whether Kulumbekov's parole status is active or has expired is not relevant to § 1225(b)(1)(A)(iii)(IV). *See Qasemi*, 2025 WL 3654098, at *8 ("The phrase 'who has not been . . . paroled into the United States' exempts noncitizens who are both presently on parole and those who were paroled in the past."); *Munoz Materano v. Arteta*, No. 25 Civ. 6137, 2025 WL 2630826, at *11 (S.D.N.Y. Sept. 12, 2025) (Section "1225 does not authorize expedited removal of individuals who have ever been paroled into the U.S." (citing *Coal. for Humane Immigrant Rts.*, 2025 WL 2192986, at *30)). Kulumbekov was paroled into the United States in 2023 "for urgent humanitarian reasons or significant public benefit" under the immigration parole provision of § 1182(d)(5)(A), and, thus, is not someone "who has not been . . . paroled into the United States." 28 U.S.C. § 1182(d)(5)(A); *see* ECF No. 8 at 2; ECF No. 12 ¶ 4; Pet'r's Ex. 8, ECF No. 12-1.

Under the statutory language of § 1225(a)(1), "[a]n alien present in the United States who has not been admitted . . . shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). Kulumbekov's parole and past arrival into the United States do not mean he has been admitted to the United States; he remains "an applicant for admission."

8

8 U.S.C. § 1225(a)(1). Federal Respondents imply a decision from this Court finding Kulumbekov is not subject to the mandatory detention requirements of § 1225(b) will impermissibly muddle the distinction between parole into the United States and admission to the United States. *See* ECF No. 8 at 2 ("Petitioner was permitted *entry* into the United States, but not *admission*." (emphasis in original)). To the contrary, Kulumbekov's continued status as an applicant for admission before, during, and after his parole comports with the statutory language of § 1182(d)(5)(A), which specifies "parole of such alien shall not be regarded as an admission of the alien" and, after expiration of parole, "his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).[3] Kulumbekov, an applicant for admission, is required to be dealt with in the same manner as any other applicant for admission to the United States. *See id.*; *see also Rodriguez v. Rokosky*, No. CV 25-17419, 2025 WL 3485628, at *2 (D.N.J. Dec. 3, 2025) (citing the statutory language of § 1182(d)(5)(A) and affirming, under the statutory language, "any other applicant for admission to the United States" refers to "any ordinary noncitizen present in the United States without admission").

To the extent Federal Respondents argue one who is an applicant for admission is required to be mandatorily detained pursuant to § 1225(b), the Court relies on the analysis articulated in *Hernandez Marcelo*, which Federal Respondents cite. *See* ECF No. 8 at 3; *Hernandez Marcelo v. Trump*, 801 F. Supp. 3d 807 (S.D. Iowa 2025). An applicant for admission, without more, is subject to the discretionary detention framework of § 1226(a) rather than the mandatory detention framework of § 1225(b). *See Hernandez Marcelo,* 801 F. Supp. 3d at 818–22. The discretionary

---

[3] Kulumbekov's continued status as an applicant for admission also does not change his status as one who has already arrived in the United States. *See* discussion *supra* Section IV.A. "He has already arrived, was paroled, entered, and has now been present in the United States for over a year. None of that is changed by the fact that he has not been formally admitted." *Qasemi*, 2025 WL 3654098, at *6 (affirming a noncitizen who is designated an "applicant for admission" is not automatically deemed to be "arriving in the United States").

9

detention framework of § 1226(a) allows for release of noncitizens on bond or under conditional parole pending a removal proceeding. 8 U.S.C. §§ 1226(a)(2)(A) and (B).

Because Kulumbekov was paroled into the United States, he is not subject to mandatory detention under § 1225(b)(1)(A)(iii)(II). This remains true even as Kulumbekov is an "applicant for admission."

### C. Remedy

Kulumbekov is not "arriving in the United States," 8 U.S.C. § 1225(b)(1)(A)(i), and he has been "paroled into the United States," 8 U.S.C. § 1225(b)(1)(A)(iii)(II). Therefore, Kulumbekov is not subject to the mandatory detention framework of § 1225(b)(1) governing those subject to expedited removal. *See* 1225(b)(1)(B)(iii)(IV).

Federal Respondents do no put forth alternative argument or authority to justify Kulumbekov's detention outside of § 1182(d)(5)(A), as governed by § 1225(b)(1). *See generally* ECF No. 8. Therefore, the Court determines Kulumbekov is being unlawfully detained and grants his petition for a writ of habeas corpus and requested relief of release from custody. *See* ECF No. 1 at 16. State Respondents, as "the person[s] having custody of the person detained," are directed to release Kulumbekov. *See* 28 U.S.C. § 2243. Federal Respondents are directed to ensure the release of Kulumbekov by State Respondents.

### V. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Petitioner Arsen Kulumbekov's Petitioner for a Writ of Habeas Corpus, ECF No. 1, is **GRANTED**. State Respondents shall release Petitioner from custody immediately. Federal Respondents shall ensure State Respondents release Petitioner from custody immediately.

**IT IS FURTHER ORDERED** that Respondents shall certify compliance with the

Court's order by filing an entry on the docket by January 21, 2026.

**IT IS FURTHER ORDERED** that, pending the issuance of final removal orders against Petitioner, Respondents are enjoined from denying Petitioner bond in any subsequent proceedings on the grounds that he is subject to mandatory detention under 8 U.S.C. § 1226(b), absent a change in relevant circumstances.

**IT IS SO ORDERED**.

Dated this 20th day of January, 2026.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE